AO 91 (Rev. 11/11) Criminal Complaint (approved by AUSA)        USAO CW No. 25-196

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br>BRYANT JARVIS<br><br>*Defendant(s)* | )<br>)<br>) Case No. 25-mj-2035<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 18, 2025 to on or about October 6, 2025 in the county of Philadelphia in the Eastern District of Pennsylvania, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 1958(a) | use of interstate commerce facilities in the commission of murder-for-hire |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

/s/ Kelvin Wilson-Bey
*Complainant's signature*

Kelvin Wilson-Bey, Special Agent, Homeland Security Investigations
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____      /s/ Craig M. Straw 10/6/2025
*Judge's signature*

City and state: Philadelphia, Pennsylvania      Honorable Craig M. Straw, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | No. 25-mj-2035 |
|---|---|
| v. | **Filed Under Seal** |
| BRYANT JARVIS | |

**AFFIDAVIT IN SUPPORT OF COMPLAINT AND WARRANT**

I, Kelvin Wilson-Bey, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1.  I submit this affidavit in support of an application for a warrant to arrest Bryant Jarvis ("JARVIS") for a violation of 18 U.S.C. § 1958(a) (use of interstate commerce facilities in the commission of murder-for-hire).

2.  I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and have been so employed since December 2023. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I received a Bachelor's degree in Criminal Justice from Kent State University and later earned a Master of Public Administration with a concentration in Law and Public Policy. Prior to joining HSI, I completed more than 1,040 hours of training through the Central Virginia Police Academy in compliance with Virginia law enforcement standards, and an additional 80 hours of crossover training to become a certified police officer in Florida.

3.  I served as an investigator with the Virginia Alcohol Beverage Control (VA ABC), where I conducted investigations ranging from underage alcohol enforcement to cases involving

homicide. In 2021, I was hired by the Orlando Police Department, where I routinely applied Florida criminal statutes in response to calls for service. While with Orlando PD, I received a certification in Advanced Patrol Tactics (June 2022) and became a certified Florida Gang Investigator (March 2023). I was collaterally assigned to the Gang Enforcement Team, where I routinely conducted proactive enforcement, resulting in numerous firearms and narcotics arrests, and had regular encounters with documented and undocumented gang members. I have conducted over 50 in-custody interviews resulting in confessions and successful prosecutions.

4. Throughout my career, I have participated in homicide and violent crime investigations, surveillance operations, undercover operations, and the execution of arrest and search warrants. I have experience analyzing electronic evidence, including evidence obtained from encrypted messaging platforms and social media accounts. For my work, I was recognized as the Orlando Police Department's Officer of the Month (June 2022), Patrol Officer of the Year (2022), and Distinguished Officer of the Year (2022). I now apply this training and experience in my duties as a Special Agent with HSI, where I investigate violent crime, narcotics trafficking, organized crime, and murder-for-hire schemes such as the one described in this affidavit.

### Statutory Authority

5. Title 18 United States Code § 1958(a) provides, in pertinent part, that "whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so . . . shall be fined under this title or imprisoned."

**PROBABLE CAUSE**

6. On September 18, 2025, Homeland Security Investigations received information from a confidential human source (hereinafter "CH1")[1] that JARVIS was soliciting CH1 to find someone to murder a then-unidentified male residing in Philadelphia, Pennsylvania. According to CH1, JARVIS offered approximately $12,000 as payment for the murder. CH1 reported that JARVIS' motive for soliciting the murder was a financial debt owed to JARVIS by the intended victim. Once law enforcement was notified of JARVIS's request, law enforcement made arrangements for CH1 to record CH1's conversations with JARVIS and to pretend to assist JARVIS with his request.

7. On September 18, 2025, CH1 recorded a video and audio conversation between CH1 and JARVIS, which was conducted over FaceTime. During the conversation, JARVIS told CH1 to "meet him tomorrow" referring to the individual JARVIS believed would conduct the murder (hereinafter the "Hitman"). JARVIS indicated he would be out of town for approximately 10 days, and asked CH1 to tell JARVIS "how much he say" referring to the cost for the murder. CH1 asked JARVIS if JARVIS wanted it done before JARVIS returned or while he was gone, to which JARVIS replied, "it can happen while I'm gone, when I come back. Well no, cause he going to want half of the payment upfront and then the other half when it's done." JARVIS stated he did not know much the Hitman would want. CH1 asked what part of Philadelphia the target was in, to which JARVIS stated that the target was in "south philly." JARVIS then told CH1 that "I got the address" although JARVIS was not sure if the address was the target's mother's house or the

---

[1] On September 5, 2025, CH1's counsel was sent a target letter regarding an ongoing investigation into CH1, JARVIS, and others' involvement in a mail theft conspiracy. CH1 is cooperating with the government in the hopes of receiving a lesser sentence. To date, the information provided by the CH1 has proven reliable and largely has been corroborated through other means in the investigation.

address the target lived at. JARVIS stated he spoke to a woman who lived on the same block as the target and that the woman stated that she saw the target walking to that house. JARVIS stated he gave the woman the address he believed the victim resided at, and the woman told JARVIS that "that's the house he be at." CH1 asked if JARVIS had any Instagram pictures of the victim, to which JARVIS replied that he had a picture of him. CH1 told JARVIS that when he met with the Hitman, CH1 would need to provide the Hitman with information about the target. CH1 asked JARVIS "whatchu want me to throw out there first" referring to the price for the murder. JARVIS responded, "start the n*gga at 8". They continued to discuss a potential price and JARVIS stated, "just let me know the number."

8. On September 29, 2025, CH1 contacted JARVIS via FaceTime. This call was audio and video recorded by CH1. Set forth below is a rough transcript of a portion of that conversation:

| CH1 | You over that other situation? You want to just scratch that? |
|---|---|
| JARVIS | Naw, we ain't scratching that. That n*gga. Fuck no we ain't scratching that |
| CH1 | I need a picture and an address |
| JARVIS | I'm, Yo bro, I'm literally on my way to his block right now to try to get a new video |
| CH1 | I thought you said you had a video or some shit like that? |
| JARVIS | I got, I got, a picture of him. I got a picture of him, and I got umm… the address. Matter of fact let me send you that, let me send you that |
| CH1 | Send it to my telly [Telegram] |
| JARVIS | Stop, stop texting on the regular phone, n*gga |

9. Late that evening, JARVIS sent two pictures of the intended victim to CH1 via Telegram followed by an address in Philadelphia, Pennsylvania, which was later confirmed as the intended victim's address per the victim's Pennsylvania driver's license/identification card. Shortly thereafter, CH1 contacted your affiant via phone while he was speaking to JARVIS on another telephone. I listened to the conversation in which CH1 asked JARVIS for the name of the

intended victim. JARVIS explained that he had already "TLO'd" the intended victim and obtained his full name and date of birth. JARVIS then provided a full name and date of birth for the victim. Based on my training and experience, I know that TLO is a database that houses Personal Identification Information (PII) for subjects throughout the world. A search of the NCIC database returned positive results for the intended victim. The information and photographs stored in the NCIC database for the intended victim matched the information provided by JARVIS to CH1.

10. On September 30, 2025, at approximately 12:27PM, JARVIS texted CH1 the following message: "He trap on 27th and Earp St." Based on my training and experience, I know that "trap" is a slang term commonly used to describe a known hangout location where narcotics are sold or distributed. CH1 understood this message from JARVIS as referring to the victim's hangout location. Later that evening, CH1 and JARVIS had a call, which was audio recorded, in which CH1 stated he was trying to arrange to have the murder happen while JARVIS was out of town. JARVIS and CH1 then discussed the price for the murder and JARVIS ended the call stating that he was in a Telsa, which have cameras.

11. On October 1, 2025, JARVIS and CH1 conducted a phone call via FaceTime. Through law enforcement databases, I know that JARVIS was scheduled to catch a flight from Philadelphia to Miami with a final destination of Colombia. During the conversation, JARVIS informed CH1 he had forgotten his passport for his flight to Colombia. In discussing the Hitman's travel to Philadelphia, JARVIS stated that "great thing about n*ggas from out of town, they can do the business and ride back home." CH1 indicated the Hitman was pressing him for $2,000 because the Hitman needed to pay for a cheap hotel. JARVIS later asked CH1 to confirm that the Hitman was "doing it alone". In another recording on the same day, JARVIS told CH1 he had just found out that the victim had court on October 14 and that "of course, aint nobody going to do

nothing downtown outside the courts cause that's downtown, all fucking cameras. But that day they can catch him outside and whoop his ass. That can start it off just by whooping his ass that day. I can pay em just to whoop his ass but still pay em to get the job done." CH1 informed JARVIS that everything was "solidified" and that CH1 would be taking the Hitman to the block where the victim lived.

12. On October 6, 2025, CH1 and JARVIS met at a parking lot in the Eastern District of Pennsylvania. CH1 inquired if JARVIS was certain he wanted to go forward, to which JARVIS responded in the affirmative. JARVIS provided CH1 with $2,000 in cash for the Hitman and $100 in cash for CH1.

## CONCLUSION

13. Based on the foregoing, I respectfully submit that the facts set forth in this affidavit demonstrate that there is probable cause to believe that Bryant Jarvis has committed a violation of 18 U.S.C. § 1958(a) (use of interstate commerce facilities in the commission of murder-for-hire). I therefore respectfully ask that the Court issue a warrant ordering his arrest for such crime.

Respectfully submitted,

/s/ Kelvin Wilson-Bey
Kelvin Wilson-Bey
Special Agent, Homeland Security Investigations

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this day of October, 2025.

/s/ Craig M. Straw 10/6/2025
The Honorable Craig M. Straw
United States Magistrate Judge